Certiorari Denied, March 14, 2011, No. 32,853

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-033

Filing Date: January 19, 2011

Docket No.  29,058

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellant,**

**v.**

**TERRY PARRISH,**

> **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Michael T. Murphy, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

**{1}**    Defendant Terry Parrish was charged with aggravated driving while under the influence (DUI) and failure to have an operating license plate lamp. *See* NMSA 1978, § 66-8-102(D)(3) (2004) (amended 2010); NMSA 1978, § 66-3-805 (1978). The State appeals the district court's order dismissing Defendant's charges based upon a violation of Defendant's

Sixth Amendment right to a speedy trial. We hold that Defendant's right to a speedy trial was not violated. As a result, we reverse the district court and remand Defendant's case for trial.

**BACKGROUND**

{2}     Defendant was arrested on November 24, 2006, issued both DUI and traffic citations, and instructed to appear in magistrate court upon the court's order. After posting a $1,750 bond, Defendant was released approximately seven and one-half hours later with eight restrictions, including not leaving Doña Ana County without permission of the court, not possessing firearms or dangerous weapons, and not possessing or consuming alcohol or entering liquor establishments.

{3}     On November 28, 2006, the State filed a criminal complaint in magistrate court, charging Defendant with aggravated DUI and failure to have an operating license plate lamp. On January 24, 2007, the State refiled those same charges in district court and then dismissed the charges in magistrate court two days later. Defendant waived arraignment in district court and entered a plea of not guilty on February 8, 2007. The district court set Defendant's bond at $1,000 and imposed twelve restrictions, including not driving a motor vehicle without a valid driver's license.

{4}     The next four months included discovery, substitution of counsel, and reassignment of judges. On February 22, 2007, the State produced discovery, identified witnesses, and requested discovery from Defendant. The State substituted counsel on March 15, 2007. Additionally, on April 10, 2007, the district court reassigned Defendant's case from the Honorable Douglas R. Driggers to the Honorable Michael T. Murphy for administrative reasons.

{5}     In June 2007, Defendant's trial was scheduled for August 2, 2007. The parties agree that neither of them received notice of the trial. According to the State, on June 7, 2007, the district court misinformed the State that trial could not be held before the expiration of the six-month rule on August 8, 2007, and advised the State to request an extension of time. Consequently, the State filed a petition for an extension of time on August 1, 2007. At a hearing on August 10, 2007, the district court denied the State's petition for an extension of time and issued an oral ruling dismissing Defendant's case for violation of the six-month rule pursuant to Rule 5-604 NMRA (2007). The State subsequently filed a motion for reconsideration, and Defendant filed a motion to dismiss for violation of the six-month rule. On September 7, 2007, the district court heard both motions and issued oral rulings denying the State's motion for reconsideration and granting Defendant's motion to dismiss. The district court entered a written order dismissing the charges against Defendant with prejudice on September 24, 2007.

{6}     The State appealed the district court's denial of its petition for extension of time and order of dismissal on September 26, 2007. On March 11, 2008, this Court filed a memorandum opinion reversing the district court, reasoning that judicial error constituted good cause for an extension of time. This Court then issued a mandate to the district court

2

for further proceedings on May 5, 2008.

**{7}** On May 7, 2008, the State requested a trial setting, and trial was subsequently scheduled for July 10, 2008. On the morning of trial, Defendant orally moved to dismiss his case on speedy trial grounds. Defendant testified that he was concerned about how a DUI conviction might affect his job and membership in a volunteer professional organization, and that he also experienced hardship caused by the Motor Vehicle Department's suspension of his driver's license. The district court issued an oral ruling dismissing Defendant's charges on speedy trial grounds and thereafter entered a written order of dismissal on October 17, 2008. The court entered the following findings: Defendant's case was a simple case in which the applicable guideline for a presumption of prejudice was nine months, Defendant's case had been pending for over eleven months at the time of the scheduled trial, Defendant's testimony regarding the prejudice caused by the delay was credible, and Defendant did not make a written demand for a speedy trial. As a result, the court dismissed Defendant's case for violation of his Sixth Amendment right to a speedy trial, and the State appealed.

## DISCUSSION

**{8}** The State argues that the district court erred in determining that Defendant's speedy trial right was violated. Specifically, the State contends that the length of delay was not presumptively prejudicial. The State further argues that even if this Court determines that the delay was presumptively prejudicial, Defendant's speedy trial right was not violated because he failed to assert his right and was not prejudiced by the delay.

**A.      Sixth Amendment Right to a Speedy Trial**

**{9}** The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Thus, the speedy trial right is implicated "when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *State v. Maddox*, 2008-NMSC-062, ¶ 10, 145 N.M. 242, 195 P.3d 1254 (internal quotation marks and citation omitted). "The heart of the right to a speedy trial is preventing prejudice to the accused." *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387. The right includes three core concerns: (1) preventing undue and oppressive pre-trial incarceration prior to trial, (2) minimizing the anxiety and concern associated with public accusation, and (3) limiting the possibilities that long delay will impair the defense of the accused. *Id.*

**{10}** In analyzing whether Defendant's speedy trial right was violated, we review the particular facts and circumstances to determine whether an "actual and articulable deprivation" of Defendant's right to a speedy trial occurred. *Id.* ¶¶ 11-12. We conduct our analysis by balancing four factors: (1) the length of the delay in bringing the defendant to trial, (2) the reasons for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the actual prejudice suffered by the defendant as a result of the delay. *Id.* ¶ 13 (relying on *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Although we defer to the district court's factual findings, we review de novo the question of whether a violation of a

defendant's speedy trial right occurred. *State v. Valencia*, 2010-NMCA-005, ¶ 11, 147 N.M. 432, 224 P.3d 659. We evaluate speedy trial claims on a case-by-case basis, independently balancing the four factors and considering no individual factor as talismanic. *Id.* Over time, the balancing test has been adapted to the varying circumstances presented in each case involving a claim of a speedy trial violation. *Garza*, 2009-NMSC-038, ¶ 14. Following the rule set out in *Garza*, if Defendant fails to make a particularized showing of prejudice, the other three factors must weigh heavily in Defendant's favor. *Id.* ¶ 39.

**B.      Speedy Trial Implications of Dismissal of Charges and the State's Appeal**

**{11}**    As a preliminary matter, we address the State's argument that the time during which no charges were pending against Defendant while the State appealed the dismissal of all charges should be excluded when considering Defendant's speedy trial claim. Defendant responds that the time on appeal should be considered because he was fully aware of the State's right to appeal, continued to retain the services of his attorney, filed a memorandum during the appeal, and knew that he was still facing possible future prosecution.

**{12}**    In *United States v. Loud Hawk*, 474 U.S. 302, 310-11 (1986), the Supreme Court addressed the speedy trial implications of the district court's dismissal of the defendants' indictments followed by the government's appeal. The Court determined that the time during which the defendants were no longer under indictment or restraint while the state appealed the dismissal should be excluded when considering their speedy trial claim. *Id.* The Court reasoned that after the charges against the defendants were dismissed, the defendants suffered no actual restraints on their liberty and were no longer the subjects of public accusation. *Id.* at 311-12; *see also United States v. MacDonald*, 456 U.S. 1, 9 (1982) (reasoning that after charges have been dismissed, a defendant no longer suffers restraints on his liberty and is no longer  the subject of public accusation). The Court further concluded that the defendants' need for counsel and the court's order to appear during the appeal did not reach the level of restraint required to apply the speedy trial clause. *Loud Hawk*, 474 U.S. at 312. In reaching this conclusion, the Court reasoned that impairment of liberty is the core concern of the speedy trial clause and that the speedy trial right does not shield a defendant from all anxiety, inconvenience, or expense associated with criminal defense. *Id.* Instead, time where a defendant is neither under arrest nor indictment is appropriately analyzed under the due process clause of the Fifth Amendment of the United States Constitution. *MacDonald*, 456 U.S. at 7.

**{13}**    Our appellate courts have followed the United States Supreme Court's reasoning in *Loud Hawk* and *MacDonald*. In *State v. McCrary*, 100 N.M. 671, 674-75, 675 P.2d 120, 123-24 (1984), the state dismissed the defendants' charges, the defendants' were released from custody, the state subsequently filed new indictments, and the defendants filed an interlocutory appeal contesting the new charges. Our Supreme Court relied on *MacDonald* to conclude that during intervals where the "charges are dropped in good faith, the delay is not scrutinized by the speedy trial clause of the Sixth Amendment." *McCrary*, 100 N.M. at 675, 675 P.2d at 124. Similarly, in *State v. Hill*, 2005-NMCA-143, ¶¶ 3, 6, 13, 138 N.M. 693, 125 P.3d 1175, the state dismissed the defendant's charges, the defendant was released from custody, and the state reinstated the charges approximately thirteen years later after

4

new evidence came to light. This Court held that the defendant's speedy trial right did not run during the interval because the defendant was not an "accused" and no charges were pending against him. *Id.* ¶ 15. Finally, in *State v. Wittgenstein*, 119 N.M. 565, 567, 893 P.2d 461, 463 (Ct. App. 1995), this Court specifically addressed delay caused by judicial review where the defendant was convicted, the defendant successfully appealed the conviction, and the charges were dismissed and reinstated for new trial. Our Court relied on *Loud Hawk* to hold that "delay caused by judicial review . . . should not be considered under a speedy-trial claim until the defendant meets the heavy burden of showing an unreasonable delay caused by the prosecution in that [review], or a wholly unjustifiable delay by the [reviewing] court." *Wittgenstein*, 119 N.M. at 570, 893 P.2d at 466 (alteration in original) (internal quotation marks and citation omitted). Instead, delay while no charges are pending and a defendant's liberty is unrestrained is appropriately analyzed under the due process clause of the Fifth Amendment of the United States Constitution. *Hill*, 2005-NMCA-143, ¶¶ 11-12.

**{14}** Based upon the reasoning in *Loud Hawk* and our appellate cases, we determine that the time during which no charges were pending against Defendant while his case was on appeal shall be excluded when considering Defendant's speedy trial claim. Procedurally, Defendant's case is analogous to *Loud Hawk* where the district court dismissed Defendant's charges, the State successfully appealed, and Defendant's charges were reinstated. 474 U.S. at 307-08. Defendant argues that the time on appeal implicated his speedy trial rights because he knew of the possibility of prosecution and also retained counsel and filed a memorandum during that time. However, consistent with *Loud Hawk*, we conclude that Defendant's anxiety about possible prosecution, retention of counsel, and filing of a memorandum does not trigger the application of the speedy trial clause. *See id.* at 312.

**{15}** Defendant also argues that time on appeal may be counted for speedy trial purposes under certain circumstances, such as when charges are formally dismissed for tactical reasons. *See United States v. Lara*, 520 F.2d 460, 464-65 (D.C. Cir. 1975) (holding that where the government's dismissal of an indictment in one jurisdiction and refiling in another jurisdiction was attributable to governmental forum shopping, the time during which no charges were pending counted under the speedy trial analysis); *but see McCrary*, 100 N.M. at 674-75, 675 P.2d at 123-24 (distinguishing *Lara* and excluding the time on appeal where the state dismissed and refiled the charges in good faith in order to charge the defendants with the appropriate crime). Here, Defendant failed to demonstrate unreasonable delay on the part of the State and failed to argue any unjustifiable delay by the reviewing court. *See Wittgenstein*, 119 N.M. at 570-71, 893 P.2d at 466-67 (reasoning that time on appeal should not be considered in the speedy trial analysis unless the defendant demonstrates unreasonable delay by the state or wholly unjustifiable delay by the reviewing court). On the contrary, the State was successful in an expeditious appeal. As a result, we conclude that the delay caused by the State's appeal was not unreasonable. *See id.* at 570, 893 P.2d at 466 (reasoning that appellate review safeguards the rights of public justice as well as the rights of defendants).

**{16}** Finally, Defendant relies upon out-of-state cases to argue that time on appeal should trigger the speedy trial analysis even though it ultimately does not weigh against the state. *See Kramer v. State*, 652 S.E.2d 843, 846 (Ga. Ct. App. 2007) (counting the time during the

state's appeal as part of the length of delay factor to trigger the Sixth Amendment speedy trial analysis but concluding that the delay should not be weighed against the state); *see also State v. Shaw*, 113 P.3d 898, 909-13 (Or. 2005) (en banc) (determining that an appeal by the state may prejudice the defense under certain circumstances, but ultimately concluding that the delay did not violate the defendant's speedy trial right under the Oregon constitution and Oregon statute). However, Defendant cites no New Mexico precedent supporting this proposition. Consequently, we rely upon the United States Supreme Court's decision in *Loud Hawk* and New Mexico case law. We also note that the Tenth Circuit Court of Appeals has followed *Loud Hawk* in excluding time where charges have been dismissed from the speedy trial analysis. *United States v. Reardon*, 787 F.2d 512, 514, 518 (10th Cir. 1986) (relying on *Loud Hawk* to hold that the time between the state's dismissal of the original charge and reindictment with that same charge should be excluded from the Sixth Amendment speedy trial analysis). As a result, we hold that the time during which no charges were pending against Defendant and his liberty was unrestrained while his case was on appeal should be excluded from the speedy trial analysis.

## C.      Calculating the Presumptive Period of Delay

**{17}** The time frame for the Sixth Amendment period of delay must now be calculated to determine whether the threshold presumptive period of delay has been exceeded in this case. At the district court level, Defendant argued that the time period on appeal should begin to be calculated when the final written order dismissing his charges was entered on September 24, 2007. However, Defendant later conceded that the court's oral ruling of dismissal was final on the date of the district court's hearing on September 7, 2007, and that a calculation of days could begin on that date. On appeal, Defendant now argues that the applicable date for calculation of days is the date of the final order, although there is some confusion in the pleadings about the actual date the order was final. This Court is not bound by Defendant's concession where he properly raised the issue below. *See State v. Garcia*, 110 N.M. 419, 423, 796 P.2d 1115, 1119 (Ct. App. 1990) (reasoning that this Court was not bound by the state's concession that the defendant's speedy trial right attached at arrest). We conclude that the order of dismissal was final when the written order was entered on September 24, 2007, and we begin the calculation of the number of days when no charges were pending on that date. *See State v. Vaughn*, 2005-NMCA-076, ¶¶ 23, 25, 137 N.M. 674, 114 P.3d 354 (stating the general rule that oral rulings are ineffective and not final judgments, and concluding that the limited exceptions to this rule do not include verdicts). We further conclude that Defendant was again an "accused" for speedy trial purposes beginning on May 5, 2008, when this Court issued a mandate to the district court reversing and remanding the case for further proceedings against Defendant. *See State v. Brown*, 2003-NMCA-110, ¶¶ 5, 15, 134 N.M. 356, 76 P.3d 1113 (restarting the clock for speedy trial purposes on the date of this Court's mandate to remand the case to the district court). Accordingly, we exclude the 224 days from September 24, 2007 to May 5, 2008, from the speedy trial analysis because no charges were pending against Defendant and his liberty was unrestrained.

**{18}** We must now examine whether the length of the delay is presumptively prejudicial. *Valencia*, 2010-NMCA-005, ¶ 13. A threshold determination that a presumptively prejudicial delay occurred simply triggers an inquiry into the remaining *Barker* factors, but

6

does not create a presumption that a defendant's speedy trial right has been violated. *Garza*, 2009-NMSC-038, ¶ 21.

**{19}** When the district court dismissed this case on speedy trial grounds, the applicable guideline for a presumption of prejudice in a simple case was nine months. *See Maddox*, 2008-NMSC-062, ¶ 9. Our Supreme Court, however, recently adopted new guidelines under which a delay of one year is considered presumptively prejudicial in a simple case. *Garza*, 2009-NMSC-038, ¶¶ 48-50. These new guidelines apply to speedy trial motions to dismiss initiated on or after August 13, 2007. *Id.* ¶ 50. Here, the district court determined, and neither party contests, that Defendant's case was a simple case. Additionally, Defendant moved to dismiss his case on speedy trial grounds on July 10, 2008, after the effective date of the new *Garza* guidelines. Consequently, we apply the *Garza* guideline setting a one-year threshold for the presumption of prejudice in a simple case.

**{20}** The speedy trial right attaches "when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *Maddox*, 2008-NMSC-062, ¶ 10 (internal quotation marks and citation omitted). Defendant argues that his speedy trial right attached at the time of his arrest on November 24, 2006. The State argues, however, that Defendant's speedy trial right did not attach until Defendant was indicted in district court on January 24, 2007. We agree with Defendant. On the day of his arrest, Defendant posted bond, and the court imposed eight restrictions, including the inability to travel outside of Doña Ana County without the court's permission. Consequently, we conclude that Defendant's liberty was impaired and his speedy trial right attached on November 24, 2007. *See Kilpatrick v. State*, 103 N.M. 52, 52-53, 702 P.2d 997, 997-98 (1985) (determining that the speedy trial right attached on the day of arrest where the defendant posted bond on that date); *see also State v. Jacquez*, 119 N.M. 127, 130, 888 P.2d 1009, 1012 (Ct. App. 1994) (reasoning that the right to a speedy trial prevents both lengthy incarceration preceding trial and "reduced impaired liberty while an accused is released on bail").

**{21}** The total time from Defendant's arrest on November 24, 2006, to the day of Defendant's scheduled trial on July 10, 2008, was 594 days. As previously discussed, we exclude the 224 days from the speedy trial analysis where no charges were pending against Defendant and his liberty was unrestrained. Consequently, we determine that the length of delay was 370 days, after deducting the time where no charges were pending while the case was on appeal. Applying the threshold one-year guideline under *Garza* for this simple case, the delay of five days over the twelve month threshold is presumptively prejudicial and triggers further evaluation under the four *Barker* factors.

## D.    Length of the Delay

**{22}** We weigh the length of delay factor only minimally in Defendant's favor because the delay of five days over the twelve-month guideline barely exceeded the minimum threshold to trigger a speedy trial analysis. *See Garza*, 2009-NMSC-038, ¶¶ 23-24 (holding that a delay of one month and six days over the nine-month threshold to trigger a speedy trial analysis "scarcely" crossed the bare minimum to trigger the analysis, was not extraordinary,

7

and did not weigh heavily in the defendant's favor).

## E. Reasons for the Delay

**{23}** Analysis of the government's reason for the delay is closely related to analysis of the length of the delay. *Id.* ¶ 25. Reasons for periods of the delay "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Maddox*, 2008-NMSC-062, ¶ 13. We weigh deliberate delay heavily against the state. *Garza*, 2009-NMSC-038, ¶ 25. Negligence or administrative delay, including delay caused by overcrowded dockets, is weighed less heavily against the state. *Id.* ¶ 26. Finally, when considering valid reasons for delay, including inevitable pretrial delay, we "balance the reasonableness of the manner in which the State has moved a case toward trial against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." *Id.* ¶ 27 (internal quotation marks and citation omitted). Consequently, the State bears the burden of demonstrating why each period of delay was "both inevitable and wholly justifiable, and whether a case has moved toward trial with customary promptness." *Valencia*, 2010-NMCA-005, ¶ 19 (internal quotation marks and citations omitted).

**{24}** We first analyze the two-month delay from Defendant's arrest on November 24, 2006, to the State's filing of charges against Defendant in district court on January 24, 2007. During this period, the State dismissed the original charges in magistrate court and refiled those same charges in district court. We conclude that this two-month period is negligent delay that weighs slightly against the State. *See Garza*, 2009-NMSC-038, ¶ 28 (concluding that the state's decision to dismiss charges in magistrate court and refile in district court was negligent delay that weighed against the state).

**{25}** We next examine the approximately four and one-half month delay between Defendant's indictment on January 24, 2007 and June 7, 2007, when the district attorney asserted that it was misinformed by the district court that trial could not be scheduled before the six-month rule ran. During this period, judges were reassigned and the State produced discovery, identified witnesses, and requested discovery from Defendant. Consequently, we determine that the case progressed with customary promptness during this period, and we weigh this time period neutrally. *See State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 (concluding that delay during which a case moves forward with customary promptness should be held against neither party), *cert. denied*, 2010-NMCERT-005, 148 N.M. 574, 240 P.3d 1048; *see also State v. Benavidez*, 1999-NMCA-053, ¶ 35, 127 N.M. 189, 979 P.2d 234 (noting that a delay of less than one month attributed to the reassignment of judges in the district court should not be allocated to either party), *rev'd on other grounds by* 1999-NMSC-041, 128 N.M. 261, 992 P.2d 274.

**{26}** Three and one-half months elapsed between the delay beginning on June 7, 2007, and the dismissal of Defendant's case on speedy trial grounds on September 24, 2007. As a result of the district court's alleged misinformation, the State filed an unsuccessful petition for extension of time on August 1, 2007. The State argues and the record reflects that the State was ready to proceed with trial and had already identified its witnesses, but the State was waiting for an available trial date on the court's docket. Consequently, we attribute the

8

remaining three and one-half months delay slightly against the State as administrative error. *See Garza*, 2009-NMSC-038, ¶¶ 26, 29 (concluding that administrative burdens such as overcrowded courts constitute a more neutral reason such as negligence, which is weighed less heavily against the state).

**{27}** After the State appealed and this Court issued a mandate to the district court for further proceedings on May 5, 2008, the State promptly requested a trial setting on May 7, 2008. Defendant's case was scheduled for trial on July 10, 2008. On the day of trial, Defendant orally moved to dismiss on speedy trial grounds, and the district court granted Defendant's motion. We conclude that Defendant's case proceeded with customary promptness following the remand to the district court and weigh this two-month period against neither party.

**{28}** In considering the delay of just over twelve months, we weigh five and one-half months slightly against the State as negligent administrative delay, and we weigh the remaining six and one-half months as neutral time that weighs against neither party. Since the only delay in this case was negligent, the extent that it ultimately weighs against the State depends upon the length of delay. *Id.* ¶¶ 26, 30. As previously discussed, the delay in this case barely exceeded the minimum threshold to trigger the speedy trial analysis. As a result, we conclude that the negligent administrative reasons for delay in Defendant's case weigh only slightly in Defendant's favor. *See id.* (holding that where the length of delay only slightly exceeded the threshold for triggering a speedy trial analysis and negligence caused the delay, the reasons for delay factor weighed only slightly in favor of the defendant).

## F. Assertion of the Right

**{29}** In reviewing Defendant's assertion to his right to a speedy trial, we assess both the timing of the assertion and the manner in which Defendant asserted the right. *Id.* ¶ 32. We give weight to this factor based upon the "frequency and force" of the defendant's objections to the delay. *Id.*; *see Barker*, 407 U.S. at 529.

**{30}** The district court determined that Defendant did not make a written demand for a speedy trial. Instead, Defendant orally moved to dismiss his case on speedy trial grounds on the morning of trial. Moreover, Defendant acknowledges that he did not file a request for a speedy trial in conjunction with his waiver of arraignment. However, Defendant argues that he asserted his right to a speedy trial by opposing the State's petition for extension of time at the hearing on August 10, 2007.

**{31}** In general, "the closer to trial an assertion is made, the less weight it is given." *Moreno*, 2010-NMCA-044, ¶ 33. We recognize that an objection to an extension of time is persuasive, but not conclusive, evidence that Defendant asserted his right to a speedy trial. *See State v. Gallegos*, 2010-NMCA-032, ¶ 24, 118 N.M. 182, 231 P.3d 1124. We note that Defendant's opposition to the State's petition for an extension of time occurred after the date of his first scheduled trial in conjunction with his motion to dismiss for violation of the six-month rule. Moreover, the record reflects that Defendant specifically asserted his right to a speedy trial for the first time in an oral motion on the morning of his second scheduled

trial. As a result, we conclude that Defendant's assertion of his speedy trial right was neither timely nor forceful. Accordingly, we weigh Defendant's assertion of his right to a speedy trial only slightly in his favor.

## G. Prejudice to Defendant

**{32}** When considering the prejudice factor of the balancing test, we evaluate the three core interests of the speedy trial right: (1) preventing oppressive pretrial incarceration, (2) minimizing a defendant's anxiety and concern, and (3) limiting the possibility of impairment to the defense. *Garza*, 2009-NMSC-038, ¶ 35. In evaluating the first two types of prejudice, we recognize that some degree of oppression and anxiety is inherent for every defendant who is awaiting trial. *Id.* Consequently, we weigh this factor in Defendant's favor only where the pretrial incarceration or anxiety is undue. *Id.* In comparison, prejudice to the defense is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Valencia*, 2010-NMCA-005, ¶ 28 (internal quotation marks and citation omitted). Defendant bears the burden of demonstrating and substantiating prejudice. *Id.* If Defendant fails to make a particularized showing of prejudice, the other three factors must weigh heavily in Defendant's favor. *Garza*, 2009-NMSC-038, ¶ 39.

**{33}** Defendant argues that he suffered unduly harsh conditions of release and undue anxiety due to his travel restrictions, restrictions on handling firearms, and concerns that his job or professional membership might be affected by a conviction. Defendant further argues that the district court specifically found that Defendant suffered anxiety and concern over and above normal anxiety for average defendants. We note, however, that the district court's order of dismissal specifically redacted this finding. Defendant has the burden of showing that he suffered particularized prejudice that went beyond the generalized prejudice inherent in the delay between arrest and trial. *See id.* ¶¶ 35-37. Here, Defendant's alleged prejudice is similar to the disruptions that any accused person might suffer and does not demonstrate particularized prejudice. *See id.* ¶ 37 (concluding that where the defendant spent several hours in jail and was released with normal bond conditions, he failed to demonstrate particularized prejudice).

**{34}** Defendant also argues that his defense was prejudiced by the delay. Specifically, he contends that the passage of time resulted in difficulty remembering the events surrounding his case, as evidenced by his inability to remember all of the conditions of his release when questioned by the court. We recognize that prejudice may result if defense witnesses are unable to accurately recall events of the distant past. *Id.* ¶ 36. Defendant, however, neither argues nor substantiates how any alleged memory loss prevented exculpatory testimony that would have otherwise been offered. *See id.* (reasoning that where a defendant claims that delay impaired his defense by resulting in the unavailability of a witness, the defendant must identify with particularity what exculpatory testimony would have been offered had the delay not occurred). Consequently, Defendant failed to demonstrate any particular impairment to his defense, and we will not speculate as to an impairment based on Defendant's broad claim that his memory was diminished. *See Valencia*, 2010-NMCA-005, ¶ 29 (declining to speculate as to a defense impairment based upon the defendant's broad

10

claim that the delay compromised the reliability of the trial without substantiation of any particular impairment). As a result, we hold that Defendant failed to make a particularized showing of prejudice that is cognizable under the prejudice factor. *See Garza*, 2009-NMSC-038, ¶ 37 (holding that the defendant made no cognizable showing of prejudice where he failed to demonstrate particularized prejudice).

## H.  Balancing of the *Barker* Factors

{35}  In general, a defendant must show particularized prejudice in order for this Court to determine that a speedy trial violation has occurred. *Id.* ¶ 39. If, however, both the length and reasons for the delay "weigh heavily in [the] defendant's favor and [the] defendant has asserted his [speedy trial] right and not acquiesced to the delay, then the defendant need not show [particularized] prejudice for a court to conclude that the defendant's right has been violated." *Id.* Under such heightened circumstances, the "burden to show particularized prejudice could be excused." *Id.* ¶ 38.

{36}  As in *Garza*, Defendant failed to show particularized prejudice, and the other factors do not weigh heavily in his favor. *See id.* ¶ 40. Consequently, we conclude that Defendant's speedy trial right was not violated.

## CONCLUSION

{37}  For the foregoing reasons, we reverse the district court's dismissal of Defendant's charges and remand to the district court to reinstate the charges against Defendant.

{38}  **IT IS SO ORDERED.**

---

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

---

**MICHAEL D. BUSTAMANTE, Judge**

---

**CELIA FOY CASTILLO, Judge**

**Topic Index for *State v. Parrish*, Docket No. 29,058**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-ST | Speedy Trial |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-PJ | Prejudice |
| CA-RD | Right to Speedy Trial |

11

CA-SP    Speedy Trial